**MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
2801 TOWNSGATE ROAD, SUITE 200
WESTLAKE VILLAGE, CALIFORNIA 91361
TELEPHONE: 805-418-3100
FACSIMILE 805-418-3101

Barry C. Groveman (State Bar No. 082239)
*b.groveman@mpglaw.com*
K. Ryan Hiete (State Bar No. 204614)
*r.hiete@mpglaw.com*
Adam D. Wieder (State Bar No. 239369)
*a.wieder@mpglaw.com*

David R. Holmquist (State Bar No. 179872)
*David.holmquist@lausd.net*
Jay F. Golida (State Bar No. 183691)
*Jay.golida@lausd.net*
Los Angeles Unified School District
333 South Beaudry Avenue
Los Angeles, California 90017
Telephone: (213) 241-7600

Attorneys for Plaintiff Los Angeles Unified School District

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>        Plaintiff,<br><br>     vs.<br><br>HOUSING AUTHORITY OF THE CITY OF LOS ANGELES; and DOES 1-10<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br>1) Response Costs Under CERCLA 42 U.S.C. 9607<br>2) Declaratory Relief Under CERCLA<br>3) Carpenter-Presley-Tanner Hazardous Substances Act (Cal. Health & Safety Code Sections 25300-25395.45);<br>4) Declaratory Relief Under Carpenter-Presley-Tanner Hazardous Substances Act (Cal. Health & Safety Code Sections 25300-25395.45);<br>5) Continuing Trespass;<br>6) Continuing Private Nuisance;<br>7) Continuing Public Nuisance;<br>8) Negligence;<br>9) Negligence Per Se<br>10) Equitable Indemnity;<br>11) Declaratory Judgment;<br>12) Injunctive Relief<br><br>**DEMAND FOR JURY TRIAL** |

1030587.1

1

**COMPLAINT**

# INTRODUCTION

1.    Plaintiff Los Angeles Unified School District ("LAUSD") owns the property located at 2265 East 103rd Street, Los Angeles, California (the "School Site"). Currently, LAUSD operates David Starr Jordan High School on the School Site. By this action, LAUSD seeks to recover damages suffered and substantial costs incurred, and continuing to be incurred, in response to hazardous contamination migrating onto the School Site from the property located at 9901 South Alameda Street in the City of Los Angeles (the "HACLA Site"), which is owned and operated by the Housing Authority of the City of Los Angeles ("HACLA"). LAUSD also seeks injunctive relief requiring HACLA to abate the hazardous contamination and prevent its further migration from the HACLA Site onto the School Site.

2.    LAUSD has been investigating the contamination on numerous locations at the School Site and implementing a remedial response action at the School Site. The purpose of the investigation and cleanup was to identify and remove contamination existing at and beneath the School Site, primarily consisting of high levels of arsenic, lead, chromium, copper, polycyclic aromatic hydrocarbon ("PAHs"), antimony, cadmium, and polychlorinated biphenyls ("PCBs").

3.    The School Site hosts young students, teachers, employees, administrators, and parents, many of whom regularly spend at least eight hours a day at the School Site. The contamination migrating from the HACLA Site is, therefore, of particular concern because of the exposure and risks that it poses to the School Site's sensitive population.

# THE PARTIES

4.    LAUSD is, and at all times herein mentioned was, a school district and a political subdivision of the State of California.

5.    HACLA is, and at all times herein mentioned was, a state of California-

1    chartered public body, corporate and politic.

2    6.    LAUSD is currently unaware of the true names and capacities of the

3    defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants

4    by these fictitious names.  LAUSD will amend this complaint to allege their true

5    names and capacities when ascertained.  LAUSD believes that each of the

6    fictitiously named defendants, directly and/or through predecessors-in-interest, has

7    owned and/or conducted operations at facilities located near the School Site from

8    which hazardous substances have been released that have contributed to soil, soil

9    vapor and/or groundwater contamination at the School Site.  The real names of Does

10   1 through 10, inclusive, are not known or ascertainable at this time because

11   investigations to locate potentially responsible parties are ongoing.

12                    **JURISDICTION AND VENUE**

13   7.    This Court has original jurisdiction over this action pursuant to Section

14   113(b) of the Comprehensive Environmental Response, Compensation and Liability

15   Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9613(b), and pursuant to 28

16   U.S.C. § 1331.

17   8.    Venue is proper in this Court because the release of hazardous

18   substances and the damage caused thereby occurred in this District, the School Site

19   and the HACLA Site lie within this District, and HACLA is located and engaged in

20   substantial activities in this District.

21                    **GENERAL ALLEGATIONS**

22   9.    Jordan High School became part of the Los Angeles County School

23   system in 1925.  The School Site is approximately 20 acres in size and was

24   originally constructed as a junior high school in the Compton School District.  Prior

25   to its use as a school in 1925, the School Site was used for agricultural purposes.

26   10.   The School Site is surrounded by the Jordan Downs multifamily

27   residential housing development to the west; the former steel mill foundry site and

28

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

1030587.1                              3
                                  COMPLAINT

1  the HACLA Site to the north; Atlas Iron & Metal Company to the northeast; South

2  Alameda Street and commercial/industrial businesses to the east; East 103rd Street

3  and residential dwellings to the south; and commercial/industrial buildings to the

4  southeast.

5       11.    In 1996, HACLA initiated due diligence site investigations, and in 2008

6  it purchased the HACLA Site to redevelop it as a mixed-use public housing project.

7  In 2010, the first comprehensive soil sampling program implemented on the

8  HACLA Site concluded that concentrations of arsenic, lead, antimony, cadmium,

9  copper, chromium, and zinc were all detected in soil at the HACLA Site at levels

10  exceeding recognized regulatory thresholds.

11       12.    Historical uses at the HACLA Site date back to the 1920s.  Between

12  1920 and 1938 the HACLA Site was used primarily for agriculture.  Starting in the

13  late 1930s, the HACLA Site was used for the development of an Electric Arc

14  Furnace ("EAF") Steel Mini-Mill by Southwest Steel Rolling Mills.  Historical

15  records indicate that by the 1950s, two EAFs were in operation at the HACLA Site,

16  which continued to operate until the late 1970s.

17       13.    For approximately 40 years, from 1938 until the late 1970s, steel

18  products were manufactured at the HACLA Site by melting scrap iron in the EAFs.

19  In addition, scrap metal was stored in various areas throughout the HACLA Site

20  during the operation of the EAFs, including in the rectangular-shaped parcel located

21  in the northern border of the School Site that was acquired by LAUSD in 1974.  In

22  1979 and 1980, major construction was performed at the HACLA Site, including

23  demolition of the former buildings, as well as excavation and backfilling of

24  materials.

25       14.    From 2010 through 2016, numerous site investigations and remedial

26  activities were conducted at the HACLA Site, including soil excavations, to address

27  arsenic and lead contamination in the soil, as well as excavations to remove

28

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

1030587.1

4

COMPLAINT

1  underground storage tanks.

2    15.    There are numerous potential sources of arsenic, lead and other heavy

3  metals from historical EAF operations on the HACLA Site, including the following:

4  (1) the steel manufacturing EAF emissions and associated particles and dust; (2)

5  stockpiled scrap metals and slag spread throughout the HACLA Site; and (3)

6  contaminated historic fill.

7    16.    LAUSD is informed and believes, and based thereon alleges, that when

8  HACLA acquired the HACLA Site, it assumed all the liabilities related to, and

9  arising from, the environmental contamination on the HACLA Site that was created

10  by its former owners and operators.

11    17.    In March 2011, the LAUSD Board of Education approved funding for

12  the Jordan High School Redevelopment Project ("Redevelopment Project").  The

13  objective of this Redevelopment Project was to restructure Jordan High School in an

14  effort to improve academic performance.  As part of the reorganization, the school

15  would no longer operate as a comprehensive high school, but instead would be

16  separated into three small independent learning academies.  To support the

17  Superintendent's change in the educational program, modernizations and

18  enhancements to the existing facilities were proposed.

19    18.    As part of these modernizations and enhancements to the School Site,

20  which were intended to facilitate the Redevelopment Project, in 2011 LAUSD

21  conducted environmental investigations that revealed the presence of arsenic and

22  lead impacted soil.  Impacted areas were divided into operable units ("OUs").

23  Between 2014 and 2016, remediation of the OUs, as well as additional remedial and

24  investigative activities were conducted at the School Site, which included the

25  following: (1) in 2014 over 900 tons of arsenic contaminated soil was excavated and

26  disposed of as hazardous waste in the vicinity of the track bleachers (OU1); (2) in

27  2014, 95 tons of lead impacted soil near the Girl's Locker Room (OU2) was

28

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

1  excavated, and disposed of as hazardous waste; (3) in March and April of 2015,
2  1,326 tons of soil near classrooms and the former basketball courts (OU3) was
3  excavated, and disposed of; (4) in June and July of 2015 additional soil samples in
4  the bleacher area contained elevated levels of arsenic and lead; and (5) in August
5  and September of 2016 soil screening conducted on the baseball field and the area
6  north of the football field and bleachers, indicated elevated levels of arsenic and lead
7  requiring further investigation.

8       19.    In addition to its work on the Redevelopment Project, LAUSD also
9  constructed the Jordan High School Wellness Center in the western portion of the
10  School Site, which was completed in November 2013.  As part of this project,
11  LAUSD conducted an investigation that revealed that shallow soil samples
12  contained arsenic.  This resulted in the removal of approximately 494 tons of soil
13  impacted with arsenic.  LAUSD conducted an additional delineation of the
14  contamination, which required the additional removal of 680 tons of lead and
15  arsenic impacted soil.

16      20.    LAUSD first became generally aware of potential contamination at the
17  HACLA Site in or about September 2013, when it received HACLA's Draft
18  Removal Action Plan, which HACLA had submitted to the DTSC.  At that time,
19  LAUSD submitted questions and comments regarding the environmental condition
20  of the HACLA Site.

21      21.    In May 2016, HACLA officials contacted LAUSD personnel to request
22  access to the School Site as part of its investigation of the contamination on the
23  HACLA Site.   Specifically, HACLA had been directed by the DTSC to remove a
24  boundary wall between the HACLA Site and the School Site so it could properly
25  investigate and remediate contamination under the wall.  At that time, LAUSD
26  requested that HACLA investigate (and remediate, if necessary) any contamination
27  that had migrated from the HACLA Site to the School Site.

28

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

22.     In July 2016, LAUSD gave notice to HACLA that the HACLA Site was contaminating the School Site by presenting to HACLA extensive documentation showing that the arsenic and lead contamination, among other contaminants, had migrated onto the School Site.  This information was also provided to the DTSC.  Further, LAUSD prepared and conducted an extensive presentation to HACLA concerning the elevated levels of arsenic and lead (and other contaminants) that had migrated from the HACLA Site to the School Site. LAUSD also provided HACLA with initial information on the costs it had incurred to respond to the arsenic and lead contamination, and requested that HACLA investigate, and remediate if necessary, the contamination that had migrated to the School Site.

23.     During these discussions, HACLA informed LAUSD that it would not investigate the School Site contamination.  HACLA also informed LAUSD that it was close to securing millions of dollars in federal grants for its housing development, and therefore, it could not open the scope of its investigation activities beyond its own property as that would put its application for grant funds at risk.

24.     In response to HACLA's refusal to investigate and remediate the contamination that had migrated onto the School Site, LAUSD informed HACLA of state and federal regulations that require HACLA to investigate and remediate contamination beyond its property line.  LAUSD also informed HACLA that the contamination on the School Site needed to be addressed urgently because of the sensitive nature of the school's occupants and the daily exposure for eight hours a day to the contaminants at issue.

25.     Despite LAUSD's repeated requests, and the detailed information provided by LAUSD to HACLA about the nature of the contamination that had migrated onto the School Site, to date HACLA has done nothing to address the hazardous contamination that has migrated from the HACLA Site to the School Site.

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

1030587.1

COMPLAINT

# FIRST CLAIM FOR RELIEF

## Response Costs Under CERCLA, 42 U.S.C. §9607(a)
## (Against HACLA and Does 1 through 10)

26.    LAUSD repeats the allegations contained in paragraphs 1 through 25 inclusive as though fully set forth herein.

27.    HACLA is a "person," as that term is defined in Section 101(21) of CERCLA, 42 U.S.C. §9601(21).

28.    The School Site and the HACLA Site are "facilities," as that term is defined in Section 101(9) of CERCLA, 42 U.S.C. §9601 (9).

29.    HACLA is the current "owner" and "operator" of the HACLA Site, as those terms are defined in Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A).

30.    Arsenic, lead, cadmium, PAHs, and PCBs identified herein are "hazardous substances," as these terms are defined in Section 101(14) of CERCLA, 42 U.S.C. §9601(14).

31.    As provided by 42 U.S.C. §9601(35)(A)(ii), LAUSD is a government entity that acquired the School Site more than 90 years ago.

32.    In connection with the releases described herein, LAUSD has incurred, and will continue to incur, necessary costs of response consistent with the National Contingency Plan ("NCP"), including but not limited to, investigating the scope and nature of the contamination, testing soil and groundwater, and removing contaminated soil.

33.    As a direct result of the release and disposal of the hazardous substances as alleged above, LAUSD has incurred response costs consistent with NCP, and will continue to incur necessary response costs and monitoring costs in the future.  The amount of these necessary costs is not precisely ascertainable at this time but LAUSD is informed and believes that it will exceed $1,000,000.

34.     HACLA is liable under 42 U.S.C. §9607 because it is the current "owner" and "operator" of the HACLA Site.

35.     LAUSD is therefore entitled to recover from HACLA past, present and future response costs, including attorneys' fees, interest and court costs pursuant to CERCLA, including, but not limited to, 42 U.S.C. § 9607(a).

## SECOND CLAIM FOR RELIEF

### Declaratory Relief Under CERCLA

### (Against HACLA and Does 1 through 10)

36.     LAUSD repeats the allegations contained in paragraphs 1 through 35 inclusive as though fully set forth herein.

37.     An actual controversy exists between LAUSD and HACLA in that LAUSD contends, and HACLA denies, that under the circumstance alleged above, HACLA is liable for the response costs incurred by LAUSD to investigate and remediate the contamination on the School Site.  LAUSD is entitled to and hereby seeks a determination, pursuant to CERCLA, 42 U.S.C. § 9613(g)(2), of HACLA's liability to LAUSD for the response costs incurred and to be incurred by LAUSD in connection with the presence of hazardous substances on the School Site.  LAUSD is entitled to and hereby seeks a judicial determination of LAUSD's right to reimbursement and indemnification from HACLA for costs which LAUSD may incur in investigating and remediating contamination on the School Site.  LAUSD is informed and believes that HACLA denies such allegations.

38.     Substantial costs have been and will be incurred by LAUSD over time and after conclusion of this action.  Unless declaratory relief is granted, it will be necessary for LAUSD to commence successive actions against HACLA to secure compensation for the costs incurred and damages sustained, resulting in a multiplicity of suits.

39.     A declaratory judgment is appropriate for the following reasons:

a.      A declaratory judgment will prevent the need for multiple lawsuits as LAUSD incurs response costs in the future for which HACLA should be liable, and will provide a final resolution of the issues between the parties regarding liability for said costs.

b.      A declaratory judgment will assure LAUSD will be reimbursed by HACLA for the necessary costs of response incurred, ensuring a proper response to the environmental contamination present on the School Site.

c.      The public interest will be served in that a declaratory judgment will prevent a multiplicity of actions and will promote an environmentally proper response.

## THIRD CLAIM FOR RELIEF

**Recovery of Response Costs and Damages Pursuant to Carpenter-Presley-Tanner Hazardous Substances Act, California Health & Safety Code §§ 25300-25395.45**

**(Against HACLA and Does 1 through 10)**

40.      LAUSD repeats the allegations contained in paragraphs 1 through 39 inclusive as though fully set forth herein.

41.      LAUSD is a "person" as defined in the Carpenter-Presley-Tanner Hazardous Substances Act, Health & Safety Code Section 25319.  LAUSD has incurred and/or will continue to incur, substantial response costs to investigate the nature and scope of the lead and arsenic contamination and remediate the contamination migrating from the HACLA Site to the School site.  All such response costs have been necessary and consistent with the NCP.

42.      HACLA is a "responsible party" within the meaning of Health and Safety Code Section 25323.5.

43.      Health and Safety Code Section 25363(e) imposes liability on any "responsible party" who is the owner or operator of a facility, was the owner or

1  operator of any facility at which such hazardous substances were disposed of,

2  arranged for the disposal of hazardous substances, or arranged with a transporter for

3  transport of disposal of hazardous substances owned or possessed by such persons

4  for the response costs incurred.

5       44.    The actions of HACLA and its predecessors in interest with regard to

6  the disposal of hazardous substances at the HACLA Site constitute a release or

7  threatened release of hazardous substances at a facility within the meaning of the

8  Carpenter-Presley-Tanner Hazardous Substances Act.

9       45.    As a direct and proximate result of the releases or threatened releases of

10  hazardous substances from the HACLA Site, LAUSD has incurred and will continue

11  to incur response costs consistent with the NCP.

12       46.    As a direct and proximate result of HACLA's conduct, LAUSD is

13  entitled to recover past, present and future response costs, together with interest,

14  from HACLA pursuant to Health and Safety Code Section 25363(e).

15  **FOURTH CLAIM FOR RELIEF**

16  **Declaratory Relief Pursuant to Carpenter-Presley-Tanner Hazardous**

17  **Substances Act, California Health & Safety Code §§ 25300-25395.45**

18  **(Against HACLA and Does 1 through 10)**

19

20       47.    LAUSD repeats the allegations contained in paragraphs 1 through 46

21  inclusive as though fully set forth herein.

22       48.    An actual controversy exists between LAUSD on the one hand and

23  HACLA, on the other hand, regarding their respective rights and obligations

24  concerning necessary response costs under Health and Safety Code Section

25  25363(e).

26       49.    LAUSD asserts that HACLA, as the current owner and operator of the

27  HACLA Site, is responsible for all necessary response costs incurred in connection

28  with the investigation, testing, removal, and other remediation and monitoring of the

1 | hazardous substances on the School Site.

2 |     50.    LAUSD desires a judicial determination that HACLA is strictly liable

3 | to LAUSD for all such necessary costs.

4 |     51.    Such a declaration is necessary and appropriate at this time, although

5 | due to the continuing nature of HACLA's release, LAUSD anticipates that it will

6 | likely incur future response costs and will likely be required to undertake future

7 | response actions necessitated by HACLA's release for which HACLA should be

8 | strictly liable.

### FIFTH CLAIM FOR RELIEF

**Continuing Trespass**

**(Against HACLA and Does 1 through 10)**

    52.    LAUSD repeats the allegations contained in paragraphs 1 through 51 inclusive as though fully set forth herein.

    53.    LAUSD is informed and believes and based thereon alleges that at all material times, HACLA allowed, permitted, caused, and continues to allow, permit, and cause hazardous substances and other contaminants, located on the HACLA Site, to migrate into the soil and groundwater of the School Site.  HACLA has no lawful right, authority or consent to store or dispose of hazardous substances, including the disposal of lead and arsenic contamination, onto the School Site.

    54.    HACLA, by its wrongful storage and disposal of pollutants onto the School Site and its intentional and reckless failure to clean up the contamination, has unlawfully interfered and continues to interfere with LAUSD's exercise of its rights to use and enjoyment of the School Site.

    55.    LAUSD is informed and believes and based thereon alleges that the trespass caused by the migration of the contamination from HACLA Site to the School Site can be abated at a reasonable cost.

    56.    As an actual and proximate cause of HACLA's intentional and

1  unlawful trespass, LAUSD has incurred costs and suffered damages, and will

2  continue to incur costs and suffer damages, until the investigations and cleanup of

3  the School Site are complete and until HACLA cleans up the contamination existing

4  at the HACLA Site and migrating from the HACLA Site onto the School Site.

5       57.    LAUSD is informed and believes, and on that basis alleges, that

6  HACLA knew about the contamination at the HACLA Site; it knew that the

7  contamination was spreading to adjacent properties in all directions, including the

8  School Site, which is immediately adjacent to the HACLA Site; it knew that the

9  contamination consisted of heavy metals that are known carcinogens; and it knew or

10  should have known that the school immediately adjacent to the HACLA Site

11  contained a sensitive population and that there were children and school staff

12  occupying the School Site daily, who could potentially be exposed to contaminants

13  discharged, emanating, or flowing from the HACLA Site.  Despite knowing all this

14  for many years, HACLA delayed and avoided any cleanup of the contamination at

15  the HACLA Site.  Moreover, although HACLA was specifically notified by

16  LAUSD of the contamination migration of hazardous substances onto the School

17  Site, HACLA took the position that it would not investigate and remediate the

18  contamination that had spread off of its own property.  In fact, HACLA argued with

19  LAUSD that any effort to expand its investigation to the School Site may jeopardize

20  federal funding it was attempting to receive for the construction of its public/private

21  housing development.

22  **SIXTH CLAIM FOR RELIEF**

23  **Continuing Private Nuisance**

24  **(Against HACLA and Does 1 through 10)**

25       58.    LAUSD repeats the allegations contained in paragraphs 1 through 57

26  inclusive as though fully set forth herein.

27       59.    LAUSD is informed and believes and based thereon alleges that at all

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1030587.1

13

COMPLAINT

1  material times, HACLA intentionally and recklessly allowed and permitted, and

2  continues to allow and permit, hazardous substances located and stored on the

3  HACLA Site to migrate into the soil and groundwater on the School Site.  The

4  contamination migrating from the HACLA Site to the School Site constitutes a

5  continuing nuisance.  The contamination has interfered, and continues to interfere,

6  with LAUSD's use and enjoyment of the School Site.

7      60.  LAUSD is informed and believes and based thereon alleges that the

8  continuing nuisance caused by the storage and migration of the contamination from

9  the HACLA Site to the School Site can be abated at a reasonable cost.

10      61.  As an actual and proximate cause of the continuing nuisance created by

11  HACLA, LAUSD has incurred costs and suffered damages, and will continue to

12  incur costs and suffer damages, until the investigation and cleanup of the School

13  Site are complete and until HACLA cleans up the contamination existing at the

14  HACLA Site and migrating from the HACLA Site onto the School Site.

15      62.  LAUSD is informed and believes, and on that basis alleges, that

16  HACLA knew about the contamination at the HACLA Site; it knew that the

17  contamination was spreading to adjacent properties in all directions, including the

18  School Site, which is immediately adjacent to the HACLA Site; it knew that the

19  contamination consisted of heavy metals that are known carcinogens; and it knew or

20  should have known that the school immediately adjacent to the HACLA Site

21  contained a sensitive population and that there were children, teachers and school

22  staff occupying the School Site daily, who could potentially be exposed to

23  contaminants discharged, emanating, or flowing from the HACLA Site.  Despite

24  knowing all this for many years, HACLA delayed and avoided any cleanup of the

25  contamination at the HACLA Site.  Moreover, even after being notified of the

26  spread of its contamination to the School Site, HACLA informed LAUSD that

27  because federal funding for its development project was potentially at risk, it was

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1 | not going to investigate or clean up any of the contamination that had spread off of
2 | the HACLA Site.

### SEVENTH CLAIM FOR RELIEF

### Continuing Public Nuisance

### (Against HACLA and Does 1 through 10)

63.     LAUSD repeats the allegations contained in paragraphs 1 through 62 inclusive as though fully set forth herein.

64.     Groundwater within the State of California, including the groundwater underlying the School Site and the HACLA Site, constitutes "waters of the state" pursuant to California Water Code §13050(e).

65.     The California Legislature has declared, as stated in California Water Code §13000, that "the people of the state have a primary interest in the conservation, control and utilization of water resources of the state, and that the quality of all waters of the state shall be protected for use and enjoyment by the people of the state."

66.     LAUSD is informed and believes and based thereon alleges that at all material times, HACLA allowed and permitted, and continues to allow and permit, hazardous substances and other contaminants that had been released onto the HACLA Site to migrate into the soil and groundwater on, adjacent to, and underlying the School Site and other adjacent properties, and into the waters of the State of California.  These hazardous substances and other contaminants continue to migrate onto the School Site, adjacent properties, and the groundwater.

67.     The hazardous substances and contaminants are carcinogens, reproductive toxins and/or are otherwise highly toxic to plant and animal life, and their release into the soil and groundwater constitutes a public nuisance within the meaning of California Civil Code §§ 3479 and 3480.  The hazardous substances and contaminants have migrated, and are continuing to migrate, into the waters of the

1  state and the environment and are damaging the public natural resources of the State

2  of California.  Further, the hazardous substances and contaminants that have

3  migrated onto the School Site have injured students, teachers, school administrators,

4  by potentially exposing them and creating fear of exposure to heavy metals,

5  depriving them of the free use of the facilities of the School Site, including the

6  athletic facilities, and forcing LAUSD to spend time and money for the

7  investigation, testing and environmental remediation of the School Site.

8      68.    While this public nuisance affects a considerable number of persons, it

9  has caused special injury to LAUSD because the hazardous substances and

10  contaminants that HACLA allowed to migrate, continue to migrate, primarily to the

11  soil and groundwater on and underlying the School Site.  Further, LAUSD has

12  incurred costs and suffered damages in remediating the environmental conditions at

13  the School Site.

14      69.    LAUSD is informed and believes and based thereon alleges that the

15  contamination caused by the nuisance can be abated at reasonable cost.

16      70.    As a direct and proximate result of the continuing nuisance maintained

17  by HACLA, LAUSD has incurred costs and suffered damages in remediating the

18  environmental conditions at the School Site, and will continue to incur costs and

19  suffer damages until the environmental condition of the School Site has been fully

20  remediated and the migration of hazardous substances and other contaminants from

21  the HACLA Site to the School Site has ceased.  LAUSD is therefore entitled to an

22  award of damages according to proof at trial and an order requiring HACLA to

23  abate the nuisance in accordance with all applicable laws, regulations and orders.

24      71.    LAUSD is informed and believes, and on that basis alleges that, at all

25  relevant times, HACLA knew about the contamination at the HACLA Site; it knew

26  that the contamination was spreading to adjacent properties in all directions,

27  including the School Site, which is immediately adjacent to the HACLA Site; it

28

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

1   knew that the contamination consisted of heavy metals that are known carcinogens;

2   and it knew that there were children and school staff occupying the School Site

3   daily, who could potentially be exposed to contaminants discharged, emanating, or

4   flowing from the HACLA Site.  Despite knowing all this for many years, HACLA

5   delayed and avoided any cleanup of the contamination at the HACLA Site.

### EIGHTH CLAIM FOR RELIEF

**Negligence**

**(Against HACLA and Does 1 through 10)**

10   72.     LAUSD repeats the allegations contained in paragraphs 1 through 71

11   inclusive as though fully set forth herein.

12   73.     HACLA owes LAUSD a continuing duty to prevent the hazardous

13   substances situated on the HACLA Site from spilling onto and contaminating the

14   School Site in a manner, which caused LAUSD to sustain damages and losses.

15   74.     HACLA breached its duty to LAUSD, and continues to breach its duty

16   to LAUSD, by negligently owning, maintaining, controlling, managing and

17   operating the HACLA Site so as to cause the hazardous substances situated on the

18   HACLA Site to spill onto and contaminate the School Site, and by intentionally and

19   recklessly failing to timely clean up the contamination.

20   75.     HACLA, by failing to exercise reasonable care in the conduct of the

21   ownership and operation of the HACLA Site, and by its continuing failure to

22   exercise reasonable care to abate the hazardous and dangerous conditions at that

23   property, proximately caused and will continue to cause LAUSD to investigate,

24   identify, remove, and remediate the hazardous substances and other contaminants at

25   the School Site and to incur significant response costs in undertaking each of these

26   activities, unless and until the contamination is cleaned up.

27   76.     LAUSD has been damaged by the necessity to incur significant

28   response costs and respond to HACLA's negligence in an amount as yet unknown

1    for which LAUSD makes claim according to proof at trial.

2         77.    The damages and losses sustained by LAUSD were caused solely by

3    HACLA's negligence, without any fault of LAUSD contributing thereto.  Therefore,

4    LAUSD is entitled to recover from HACLA the full amount of its damages.

5                           **NINTH CLAIM FOR RELIEF**

6                              **Negligence Per Se**

7                    **(Against HACLA and Does 1 through 10)**

8

9         78.    LAUSD repeats the allegations contained in paragraphs 1 through 77

10   inclusive as though fully set forth herein.

11        79.    HACLA's failure and continued failure to date to exercise reasonable

12   care in controlling the release of hazardous substances and other contaminants

13   violates numerous state and federal statutes, rules and regulations, including but not

14   limited to, California Health & Safety Code §§25189 and 25189.6, and California

15   Water Code §§13271 and 13304.

16        80.    As a direct and proximate result of HACLA's continued failure to

17   exercise reasonable care in controlling the release of hazardous substances and other

18   contaminants at the HACLA Site and onto the School Site, the School Site has been

19   contaminated, and continues to be contaminated by migration of the hazardous

20   substances from the HACLA Site.

21        81.    The purpose of the aforementioned statutes is to set a standard of care

22   or conduct to protect LAUSD's students, teachers, faculty, school staff and others in

23   their classes, athletic fields, and their property and the environment from the type of

24   improper activities engaged in by HACLA.  Therefore, HACLA's improper

25   activities and violations constitute negligence per se.

26        82.    As a direct and proximate result of HACLA's negligence per se,

27   LAUSD has suffered damages, including other consequential, incidental and general

28   damages to be proven at trial.

# TENTH CLAIM FOR RELIEF

## Common Law Equitable Indemnity
## (Against HACLA and Does 1 through 10)

83.   LAUSD repeats the allegations contained in paragraphs 1 through 82 inclusive as though fully set forth herein.

84.   Under the oversight of DTSC and as compelled by the California Education Code, LAUSD conducted remedial activities and incurred response costs for which HACLA is primarily liable.

85.   HACLA, by failing to remediate the hazardous substances and other contaminants existing and being stored on the HACLA Site and by permitting these hazardous substances and contaminants to migrate onto the School Site, is liable for the presence and release of the hazardous substances and other contaminants onto the School Site.

86.   Any liability or potential liability of LAUSD due to the presence of hazardous substances and other contaminants at the School Site is the sole and proximate result of the improper handling, use, storage, disposal and/or release by HACLA of hazardous substances and other contaminants at the HACLA Site, as, due to such improper handling, use, storage, disposal and release, the hazardous substances and other contaminants migrated from the HACLA Site to the School Site.  HACLA's improper handling, use, storage, disposal and release of hazardous substances and other contaminants at the HACLA Site gave rise to a duty on the part of HACLA to investigate and remove or remedy the hazardous condition created by their conduct.

87.   HACLA has failed, and continues to fail, to recognize its equitable obligation to assume responsibility for the investigation, removal and/or remediation of the hazardous substances and hazardous wastes which have contaminated the School Site.

88.     LAUSD has incurred costs as a consequence of HACLA's improper handling, use, storage, disposal and release of hazardous substances and contaminants, and is therefore entitled to be indemnified by HACLA for all of LAUSD's past, present and future costs for the investigation, testing, removal and remediation of the hazardous substances and other contaminants at the School Site, including attorneys' fees, incurred in response to LAUSD's duty and obligations arising under state and federal law.

## ELEVENTH CLAIM FOR RELIEF

### Declaratory Judgment Under State Law
### (Against HACLA and Does 1 through 10)

89.     LAUSD repeats the allegations contained in paragraphs 1 through 88 inclusive as though fully set forth herein.

90.     LAUSD is informed and believes and based thereon alleges that an actual controversy has arisen and now exists between LAUSD and HACLA in that LAUSD contends and, upon information and belief, HACLA denies, that responsibility for the hazardous substances and other contaminants caused or permitted to come onto the School Site rests solely and entirely upon it.

91.     LAUSD has incurred and will continue to incur necessary response costs, including, but not limited to, investigatory, remedial and removal expenses, attorneys' fees, and interest, in remediating the School Site.

92.     LAUSD seeks a declaration of the rights and obligations of the parties, binding in any subsequent action or actions to recover necessary response costs and other damages incurred and to be incurred by LAUSD in connection with the releases, threatened releases, spills, disposals, discharges of hazardous substances and other contaminants that have and will pollute the School Site in the manner previously referenced.  Such declaration will prevent multiple, future actions to determine the rights and obligations of the parties.

# TWELFTH CLAIM FOR RELIEF

## Injunctive Relief Under State Law
### (Against HACLA and Does 1 through 10)

93.     LAUSD repeats the allegations contained in paragraphs 1 through 92 inclusive as though fully set forth herein.

94.     Since acquiring the HACLA Site in or about March 2008, HACLA has wrongfully and unlawfully permitted hazardous substances and other contaminants to be stored at and released onto the HACLA Site, which subsequently migrated onto the School Site and into the School Site's underlying groundwater.

95.     LAUSD hereby demands that HACLA stop failing to properly remediate the hazardous substances and other contaminants contained on the HACLA Site and stop allowing the hazardous substances and other contaminants contained thereon to be released onto the School Site and into the School Site's underlying groundwater.

96.     HACLA's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to LAUSD, so long as hazardous substances and other contaminants remain on the HACLA Site, LAUSD's contractors, employees, agents, and the students, faculty and staff of LAUSD's school, remain at risk of exposure to the hazardous substances and other contaminants.

97.     LAUSD has no adequate remedy at law because, unless and until HACLA stops allowing the hazardous substances and other contaminants contained thereon to be released onto School Site and into the School Site's underlying groundwater, LAUSD cannot be assured the contamination has been remediated to, and will remain at, a safe level.  This will result in further irreparable harm to LAUSD.

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, LAUSD prays for judgment as follows:

1.      Against HACLA, for response costs and other damages incurred by LAUSD, under CERCLA, including reasonable attorneys' fees and interest;

2.      Against HACLA, for a judicial declaration under CERCLA that HACLA is liable for all future response costs incurred by LAUSD and other costs that may be incurred by LAUSD in connection with the School Site;

3.      Against HACLA, for response costs and other damages, under HSAA, incurred by LAUSD, including prejudgment interest allowed by law;

4.      Against HACLA, for a judicial declaration under HSAA that the Defendants are liable for all future response costs and other costs that may be incurred by LAUSD in connection with the School Site;

5.      Against HACLA for general, consequential and incidental damages, in an amount to be proven at trial, caused by HACLA's continuing private nuisance, continuing public nuisance, continuing trespass, negligence and negligence per se;

6.      Against HACLA for equitable indemnification;

7.      Against HACLA for a judicial declaration that HACLA caused the contamination at the School Site and are liable for its total cost of remediation;

8.      Against HACLA for a preliminary injunction and a permanent injunction enjoining HACLA, their agents, servants, and all persons acting under, in concert with, or for HACLA, from:  (a) failing to prevent contamination of the School Site; and (b) failing to remediate the hazardous substances and other contaminants contained on the School Site;

9.      Against HACLA for the reasonable amount of attorneys' fees and costs expended in recovering response costs and for the reasonable fees required to retain experts and consultants;

10.      Against HACLA for LAUSD's expenditure of costs to investigate,

1  remove and remediate the hazardous substances and other contaminants that

2  HACLA has allowed to migrate through the soils and groundwater of the HACLA

3  SITE and onto the School Site will confer a significant benefit on the general public

4  to protect and restore natural resources within the public trust.  Therefore, LAUSD

5  prays for all reasonable attorneys' fees and costs pursuant to Cal. Civ. Proc. Code §

6  1021.5;

7         11.    Against HACLA, for such other and further relief which the Court may

8  deem just and proper.

9                                        **JURY DEMAND**

10         LAUSD demands a jury trial.

11

12  DATED: Feburary 27, 2017            MUSICK, PEELER & GARRETT LLP

13

14

15                                  By: /s/ _____

16                                      Barry C. Groveman
                                        K. Ryan Hiete
17                                      Adam D. Wieder
                                        Attorneys for Plaintiff Los Angeles Unified
18                                      School District

19

20

21

22

23

24

25

26

27

28